# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELIZABETH  SMITH<br>3333 K Street NW Suite 450<br>Washington, DC 20007<br>AS PERSONAL REPRESENTATIVE OF<br>THE SPOUSES, NEXT OF KIN, OTHER<br>STATUTORY BENEFICIARIES, AND THE<br>ESTATES OF THE FOLLOWING MH370<br>passengers:<br><br>NICOLE MENG<br>LEO MENG,<br>YAN ZHANG,<br>BING MENG<br>CHUANE XU<br>FANQUAN MENG<br>MENG ZHANG<br>PENG YAN<br>YUANHUA BAO<br>JUNZHANG CHE<br>JINQUAN ZHANG<br>GUOWEI DONG<br>TAO GAN<br>YUCHEN LI<br>ZHI LI<br>WENZHI MA<br>TUGUI MAO<br>XUEZHU TANG<br>QINGYUAN YANG<br>LIJUN WANG<br>LINSHI WANG<br>DEMING XIONG<br>MEIHUA YANG<br>JIANFENG YAO<br>ZHONG HAI ZHANG<br>ZHAOFANG ZHAO<br>BAOTANG LOU<br>FENG ZHOU<br>JINLING ZHOU<br>SHIJIE ZHOU<br>SHAOHUA ZHANG | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION No.:<br><br><br><br><br>COMPLAINT |

| | |
|---|---|
| XIANWEN SHI | ) |
| LI YANG | ) |
| JIXIN FENG | ) |
| QINGJUN TIAN | ) |
| LIPING XIE | ) |
| WENBO LI | ) |
| FUXIANG GAN | ) |
| XIAODAN YAN | ) |
|  QIAO XING | ) |
| HAODONG WEN | ) |
| SIWAN HU | ) |
| NA ZHANG | ) |
| YONGGANG WANG | ) |
| | ) |
| Plaintiffs, | ) |
| - against - | ) |
| | ) |
| MALAYSIA AIRLINES BERHAD, | ) |
| d/b/a "Malaysia Airlines," | ) |
| by counsel Richard A. Walker, Kaplan, | ) |
| Massamillo & Andrews, LLC, 200 West | ) |
| Madison Street, 16th Floor, Chicago, IL 60605 | ) |
| MALAYSIAN AIRLINES SYSTEM | ) |
| BERHAD, d/b/a "Malaysia Airlines," | ) |
| by counsel Richard A. Walker, Kaplan, | ) |
| Massamillo & Andrews, LLC, 200 West | ) |
| Madison Street, 16th Floor, Chicago, IL | ) |
| 60605, and | ) |
| ALLIANZ GLOBAL CORPORATE AND | ) |
| SPECIALTY by counsel Richard A. Walker, | ) |
| Kaplan, Massamillo & Andrews, LLC, 200 | ) |
| West Madison Street, 16th Floor, Chicago, IL | ) |
| 60605 | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT**

At all times relevant herein, this case is brought by the personal representative  on behalf

of spouses, family members including surviving spouses, children, parents, grandparents and

other next of kin, and other lawful heirs, beneficiaries and dependents and the estates of

decedents, who were Malaysia Airlines Flight 370 passengers MENG ZHANG, NICOLE MENG, LEO MENG, YAN ZHANG,YUANHUA BAO, JUNZHANG CHE, JINQUAN ZHANG, GUOWEI DONG, TAO GAN, YUCHEN LI, ZHI LI, WENZHI MA, TUGUI MAO, XUEZHU TANG, LIJUN WANG, LINSHI WANG, DEMING XIONG, MEIHUA YANG, JIANFENG YAO, ZHONG HAI ZHANG, ZHAOFENG ZHAO, BAOTANG LOU, FENG ZHOU, JINLING ZHOU, SHIJIE ZHOU, SHAOHUA ZHANG, XIANWEN SHI, LI YANG, BING MENG, CHUANE XU, FANQUAN MENG, JIXIN FENG, QINGJUN TIAN, LIPING XIE, WENBO LI, FUXIANG GAN, PENG YAN, XIAODAN YAN, QIAO XING, HAODONG WEN, SIWAN HU, NA ZHANG, QINGYUAN YANG, and YONGGANG WANG.

Through their personal representative, and the undersigned counsel, they file this Complaint against the Defendants, MALAYSIAN AIRLINES SYSTEM BERHAD (hereinafter "MAS"), also known as Corporation Number 10601-W, doing business as "Malaysia Airlines," incorporated in Malaysia and owned by The Government of Malaysia, specifically by Khazanah Nasional Berhad (hereinafter "KNB"), which is a state fund owned by the Government of Malaysia, but which airline is now alleged defunct, out of business or otherwise legally dead; MALAYSIA AIRLINES BERHAD (hereinafter "MAB"), also known as Corporation Number 1116944-X, also doing business as "Malaysia Airlines," incorporated in Malaysia and  also owned by the Government of Malaysia, specifically by KNB (other than two shares) and which appears to be the same or the successor airline of MAS but which denies it is the same airline as MAS and denies it is the successor airline to MAS; and ALLIANZ GLOBAL CORPORATE AND SPECIALTY (hereinafter "Allianz"), the insurer or underwriter of Malaysia Airlines and Malaysia Airlines Flight 370; which is legally responsible for the only estate of MAS available

to the families of the passengers of MH370 of the allegedly now dead MAS.  All Defendants at all times relevant herein conducted business in the United States of America.

Each paragraph, section, and allegation of this Complaint incorporates as though fully set forth therein all other paragraphs, sections and allegations of the Complaint.  While this action is brought by Plaintiff ELIZABETH SMITH, decedents' legal representative pursuant to DC Code Ann. § 16-2702, and § 12-101, the spouses, next of kin, family members, heirs and beneficiaries and other lawful heirs and the estate are all referred to as plaintiffs herein for ease of reference, and "plaintiff" and "plaintiffs" are used interchangeably.

## JURISDICTION AND VENUE

1.      At all times relevant herein the United States of America and Malaysia were parties to the international treaty for the Convention for the Unification of Certain Rules Relating to International Carriage by Air, concluded at Montreal, Canada on May 28, 1999 (hereinafter "M99").

2.      This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 because the U.S. District Courts have original jurisdiction of civil actions arising under the Constitution, laws or treatises of the United States, and Defendants have alleged the claims of Plaintiffs' who are all immediate family members of the above listed MH370 passengers arise under an international treaty, to wit M99, and its predecessor conventions, and as amended.

3.      M99 in relevant part provides as follows:

Article 32
Death of Person Liable

In the case of the death of the person liable, an action for damages lies in accordance with the terms of this Convention against those legally representing his or her estate.

Article 33

Jurisdiction

1. An action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination.

2. In respect of damage resulting from the death or injury of a passenger, an action may be brought before one of the courts mentioned in paragraph 1 of this Article, or in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air, either on its own aircraft or on another carrier's aircraft pursuant to a commercial agreement, and in which that carrier conducts its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a common agreement.

3. For the purposes of paragraph 2,
    a) "commercial agreement" means an agreement, other than an agency agreement, made between carriers and relating to the provision of their joint services for carriage of passengers by air;
    b) "principal and permanent residence" means the one fixed and permanent abode of the passenger at the time of the accident. The nationality of the passenger shall not be the determining factor in this regard.

4. Questions of procedure shall be governed by the law of the court seized of the case.

Jurisdiction in international air transportation is known as the Four Fora of Warsaw (referring to the Convention for the Unification of Certain Rules Relating to International Transportation by Air, 12 October 1929, hereinafter the "Warsaw Convention") and the Fifth Jurisdiction of Montreal (herein "M99"). This action is based, among other things, on each, all, or any of the five jurisdictional bases, and upon the fact that an action lies against Allianz after MAS was rendered defunct and dead and an action lies against those Defendants as would lie against MAS.

4. Under M99 the action is brought at the location at the option of Plaintiffs.

5. Defendants Allianz according to its United States website http://www.agcs.allianz.com/global-offices/united-states/office-details, is domiciled in nine "major offices in key regional centers plus a network of more than twenty local offices across in

the United States of America," and for this reason M99 confers jurisdiction in the United States courts pursuant to Articles 32 and 33 Paragraph 1.

6.      Defendant Allianz maintains its principle places of business in three locations in California and six other locations:  Burbank, Los Angeles, San Francisco, Chicago, New York, Atlanta, Englewood (Colorado), St. Louis and Alpharetta (Georgia), in the United States of America and for this reason M99 confers jurisdiction in the United States courts pursuant to Articles 32 and 33 Paragraph 1.

7.      Defendants MAS, MAB and Allianz maintain places of business in California, in the United States of America as well as other locations throughout the United States of America. Plaintiffs' passengers, or each and some of them, purchased their tickets through tour companies, travel agencies, credit card companies, or other entities located in the United States of America, and for this reason M99 confers jurisdiction in the United States courts pursuant to Articles 32 and 33 Paragraph 1.

8.      Plaintiffs' passengers LEO MENG and NICOLE MENG were citizens of the United States of America.

9.      All Defendants maintain a physical presence in the United Statesand MAS and MAB operated flights to many United States locations and for this reason M99 confers jurisdiction in the United States courts pursuant to Articles 32 and 33 Paragraph 2.

10.     This court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and is between [among]: (1) citizens of different states; (2) citizens of a state and citizens or subjects of a foreign state; and/or (3) citizens of different states and in which citizens or subjects of a foreign state are additional parties.

11.     Pursuant to 28 U.S.C. § 1391, all Defendants "reside" in the United States and in this district, a substantial part of the property that is the subject of this action is situated in the United States and in this district and all Defendants are subject to personal jurisdiction in this Court.  If any defendant is not a resident in the United States they may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

12.     Defendants MAS and MAB are owned by an instrumentality of the Malaysia and/or the government of Malaysia and engage and have engaged in "commercial activity" within the meaning of 28 U.S.C. § 1605(a)(2) of the Foreign Sovereign Immunities Act (FSIA) of 1976, 28 U.S.C. §§1602-1611..

13.     By operating Flight MH370, the Defendants MAS and MAB engaged in "commercial activity" within the meaning of 28 U.S.C. § 1605(a)(2) of FSIA.

14.     By selling a ticket through an agent for passage on Flight MH370 and other commercial activities, the Defendants MAS and MAB engaged in "commercial activity" within the meaning of 28 U.S.C. § 1605(a)(2) of the FSIA.

15.     This Court has subject matter jurisdiction over this action and personal jurisdiction over the Defendants under FSIA.

16.     This Court has, subject matter jurisdiction over this action and personal jurisdiction over the Defendants MAS and MAB pursuant to 28 U.S.C. § 1330(a), as the foreign state is not entitled to immunity.

17.     Pursuant to 28 U.S.C. §1605(a), the Defendants have waived sovereign immunity by applying for, and obtaining, a Foreign Air Carrier Permit issued by the Federal Aviation Authority ("FAA") under 49 U.S.C. § 41301.  That permit was issued to MAS by the FAA and remained in effect at all times relevant herein.  MAS and MAB agreed to waive sovereign

immunity under the FSIA in actions brought against it in the courts of the United States concerning commercial activity and/or claims under any international agreement or treaty cognizable in any court or tribunal of the United States."  Furthermore MAS, MAB and the Government of Malaysia also waived sovereign immunity by adoption, and ratification of M99.

18.     Pursuant to 28 U.S.C. § 1330(a), the Court may also exercise both subject matter jurisdiction over this action and personal jurisdiction over the Defendants because, under 28 U.S.C. §1605(a)(2), this action is also based upon an act by MAS and MAB "outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that causes a direct effect in the United States."

19.     The Court may exercise personal jurisdiction over the Defendants because, under the terms of the FSIA, "personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have," as here, subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a).

20.     MAS and MAB were and are owned by the Government of Malaysia, and the Malaysian Government exercises sufficient control over MAS and MAB as to create a principal/agent relationship.

21.     Therefore, this Court has both subject matter jurisdiction over this action and personal jurisdiction over the Defendants pursuant to 28 U.S.C. § 1330(a).

22.     Further, venue is properly based on 28 U.S.C. § 1391(b)(1-3); §1391(c)(1-3), §1391(d) and/or §1391(f)(1-4), because among other reasons,  Defendants reside in this District, events or omissions giving rise to the claim occurred in this District, a substantial part of property which is a subject of this action is situated in this District, the Defendants are subject to personal jurisdiction, Defendants reside in multiple districts in this state and are subject to personal

jurisdiction and deemed to reside in all districts in which Defendants have contacts or  the most significant contacts, and Defendants are licensed to do business in this state and this District and Defendants MAS and MAB were licensed by the FAA in this district to do business in the Unites States of America.

23.     Furthermore, as MAS and MAB were and owned by the Malaysia Government, should they be deemed a foreign state or political subdivision thereof, pursuant to 28 U.S.C. § 1391(f)(4), a civil action against a foreign state as defined in 28 U.S.C. § 1603(a) may be brought in the United States District Court for the District of Columbia.

24.     Venue is also properly based on Articles 32 and 33 of M99 because all Defendants maintain places of business and principle places of business through which significant business activity is transacted in this District.

## FACTS GIVING RISE TO THIS ACTION

25.     This action concerns the loss of Plaintiffs' family members, including spouses, parents, children, grandparents, grandchildren, and other relatives who were passengers on Malaysia Airlines Flight 370.  According to the "Factual Information Safety Investigation for MH370 by the Malaysian ICAO Annex 13 Safety Investigation for MH370," issued 8 March 2015 and updated 15 April 2015 (hereinafter referred to as the official MH370 report), Malaysia Airlines Flight 370 departed Kuala Lumpur International Airport, Malaysia on March 8, 2014 at 00:42 MYT enroute to Beijing, China. There were 239 persons on board, consisting of 227 passengers and 12 crew. The last confirmed communications and location of flight occurred at 1:19:30 MYT on March 8, 2014, over the South China Sea at or near waypoint IGARI.

26.     Allianz underwrote or otherwise insured or managed a consortium of underwriters for Malaysia Airlines (MAS) and Malaysia Airlines Flight 370.

27.     On 24 March 2014, the Prime Minister of Malaysia, Najib Bin Razak, stated in a press conference that the Flight had "ended up" in the South Indian Ocean. On the same date, Malaysia Airlines sent a text message or short messaging service message ('*sms*') to the next of kin of the MH370 passengers that reads as follows:

> *"Deeply regret that we have to assume beyond reasonable doubt that MH370 has been lost and that none of those on board survived. As you will hear in the next hour from Malaysia's Prime Minister, we must now accept that all evidence suggests the plane went down in the Southern Indian Ocean."*

28.     On July 17, 2014, Malaysia Airlines Flight 17 was shot down over Ukraine while flying at 33,000 feet, after rejecting a request by Ukraine Air Control to climb to 35,000 feet, and after straying 3.6 nautical miles from the centerline of its appointed track.  In April of 2014, before Flight 17, the International Civil Aviation Organization had warned about the risk to commercial flights over Ukraine. Some airlines avoided the airspace which was the area of warning but others including MAS continued to over fly the risky area.

29.     On August 8, 2014, according to the Malaysian Airlines System Berhad (MAS Company No.: 10601-W) Quarterly Report for the Third Quarter Ended 30 June 2014, the Government of Malaysia through its wholly owned fund the Khazanah Nasional Berhad (KNB), told MAS that it was, "proposing the privitisation of the company by way of selective capital reduction and repayment exercise."

30.     No notice was given to the families of the missing on MH370 about the planned looting of MAS assets, gutting of MAS, delisting of MAS, and death of MAS.  Selective payments or transfers of assets were made to creditors (also called "charges") deemed by MAS and/or the Malaysia government to be "relevant" and no passengers or families of passengers of MH370 were included among the creditors or charges listed by MAS 10601-W or by MAB 1116944-X.

31.    MAS also admitted in its Quarterly Report for the Second Quarter Ended 30 June 2014, and in its Quarterly Report for the Third Quarter ended 30 September 2014, that it intended to leave the passengers and families of MH370 with no recourse other than the Allianz policy, stating as follows:

(ii)  Flight MH370

Following the disappearance of flight MH370, next-of-kin of the passengers are entitled to receive compensation for the losses they suffered upon the announcement of a declaration of loss.  The compensation amounts payable to the next-of-kin of the passengers will be covered by the Company's aviation liability insurance policy and will be determinable upon submission and verification of the losses suffered by the respective next-of-kin.

These compensation amounts payable are expected to have no significant impact to the Company's financial statements.

32.    On November 6, 2014, the "shareholders" of MAS (and the Government of Malaysia, through its wholly owned government fund KNB) approved the so called "privatization".

33.    On November 7, 2014, MAB was registered and incorporated.

34.    On November 27, 2014, a bill was introduced and approved to help MAS avoid its liability, responsibility and damages to MH370 (and other) passengers by the Government of Malaysia (specifically the Dewan Rakat, The House of Representatives or "People's House" of Malaysia).  This bill became Act 765 when adopted.

35.     On December 30, 2014, the Royal Assent of the Government of Malaysia was affixed to Act 765 of the Laws of Malaysia, marking the death and end of MAS.

36.    On 29 January 2015, the Government of Malaysia declared dead the passengers on MH370.  The Director General Dato' Seri Azharuddin Abdul Rahman declared as follows:

*"It is therefore, with the heaviest heart and deepest sorrow that, on behalf of the Government of Malaysia we officially declare, MH370 an accident in accordance with the standard of Annexure 12 and 13 to the Chicago Convention and that all 239*

*passengers and crew on board MH370 are presumed to have lost their lives."*

37.   MAS and MAB have alleged, made public statements, and have asserted in response to other lawsuits, that MH370 was a flight conducted under the protections to the airline and jurisdiction, liability, and damages limits of the Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on 28 May 1999 (M99).

38.   Plaintiffs reserve the right to dispute and to not agree that Defendants are entitled to the protections and limits regarding jurisdiction, liability and damages afforded by M99, but due to Defendants' allegations and assertions, Plaintiffs must file this action to protect their rights.  Plaintiffs reserve all defenses against Defendants and the application of M99 and reserve their rights to assert that Malaysia Airlines is not entitled to the protections afforded by M99.

### THE PLAINTIFFS

39.   The Plaintiff, ELIZABETH SMITH, is a citizen, United States national, and resident of the United States.  Specifically she is a resident of the State of Maryland with offices in Washington, D.C.

40.   Plaintiff will, after filing of this Complaint, file an application to be appointed Personal Representative of the Estates of all Decedents, herein pursuant to D.C. Stat.§ 20-505, which provides'[g]ood faith acts beneficial to the estate which in fact were committed by the personal representative prior to issuance of letters shall have the same effect as acts occurring after the issuance of letters."  Plaintiff brings this claim on behalf of the Estates of the Decedents, as well as on behalf of the survivors, beneficiaries, and heirs of the Decedents, as listed herein.

41.   NICOLE MENG, who was a citizen of the United States of America; is survived by her grandfather JIANGUO ZHANG, her grandmother, HUATIAN HU, her aunt, LUYUE ZHANG, and her uncle, JIN LIU and all other lawful beneficiaries and heirs;

42.     LEO MENG, who was a citizen of the United States of America, is survived by his  grandfather, JIANGUO ZHANG, his grandmother, HUATIAN HU, his aunt, LUYUE ZHANG, and his uncle, JIN LIU and all other lawful beneficiaries and heirs;

43.     YAN ZHANG, who was a citizen of the People's Republic of China, is survived by her father, JIANGUO ZHANG, mother, HUATIAN HU, sister, LUYUE ZHANG, brother-in-law JIN LIU and ZHUO LIU, the father and Guardian Ad Litem of YAN ZHANG'S minor child, H. L., and all other lawful beneficiaries and heirs;

44.     MENG ZHANG, who was a lawful permanent resident (a/k/a "green card" holder) of the United States of America, is survived by her mother, MIN HUANG, and  her father, ZHAOJUN ZHANG and all other lawful beneficiaries and heirs;

45.     PENG YAN, who was a citizen of the People's Republic of China, is survived by his father, SHUSEN YAN and mother, XIYUN TIAN, and all other lawful beneficiaries and heirs;

46.     YUANHUA BAO, who was a citizen of the People's Republic of China, is survived by her mother, QINPING XU, her brother JIANJUN BAO, and sister, YUANJUAN BAO, and all other lawful beneficiaries and heirs;

47.     JUNZHANG CHE, who was a citizen of the People's Republic of China, is survived by her daughter, MAN ZHANG, and  her son, JIA ZHANG, and all other lawful beneficiaries and heirs;

48.     JINQUAN ZHANG, who was a citizen of the People's Republic of China, is survived  by his daughter MAN ZHANG, and son, JIA ZHANG, and all other lawful beneficiaries and heirs;

49.     GUOWEI DONG, who was a citizen of the People's Republic of China, is

survived by his spouse, XIA WU, his son, ZHENGQIAN DONG, his father, RONGJIE DONG, and mother, GUANGZHEN DING, and all other lawful beneficiaries and heirs;

50.     TAO GAN, who was a citizen of the People's Republic of China , is represented his spouse SHU ZHANG, his minor daughter, Q.G., his father, DACAI GAN, and mother, YURONG LIN, and all other lawful beneficiaries and heirs;

51.     YUCHEN LI, who was a citizen of the People's Republic of China, is survived by his spouse, MINGFEI MA, his father, YIMING LI, and mother,  ZHAOXIA SHENG, and all other lawful beneficiaries and heirs;

52.     ZHI LI, who was a citizen of the People's Republic of China, is survived by his spouse, YONGFU GAO, his minor daughter, Y.L., his  mother, GUOHUI WANG, and brother, PENG LI, and all other lawful beneficiaries and heirs;

53.     WENZHI MA, who was a citizen of the People's Republic of China, is survived by her spouse, XINMIN LIN,  daughter, Plaintiff YAN LIN, son, Plaintiff TENG MA, father, XIUSHEN MA, step-mother, GUIFEN SONG, and mother, XIURONG YANG, and all other lawful beneficiaries and heirs;

54.     TUGUI MAO, who was a citizen of the People's Republic of China is survived by his daughter, ZHU MAO,  spouse, XIANQUN HU, and minor granddaughter, M.Y., and all other lawful beneficiaries and heirs;

55.     XUEZHU TANG, who was a citizen of the People's Republic of China, is survived by her son, FAN YANG, and mother, YUPEI FENG, and all other lawful beneficiaries and heirs;

56.     QINGYUAN YANG, who was a citizen of the People's Republic of China, is survived by  his son, FAN YANG, and all other lawful beneficiaries and heirs;

57.     LIJUN WANG, who was a citizen of the People's Republic of China, is survived by his son, ZAN WANG, his spouse, LIPING WANG, and mother, XIUQIN YANG, and all other lawful beneficiaries and heirs;

58.     LINSHI WANG, who was a citizen of the People's Republic of China, is survived by his son, ZHENG WANG, and all other lawful beneficiaries and heirs;

59.     DEMING XIONG, who was a citizen of the People's Republic of China, is represented by her son, ZHENG WANG,  her father, HE XIONG, and mother, SONGRONG DUAN, and all other lawful beneficiaries and heirs;

60.     MEIHUA YANG, who was a citizen of the People's Republic of China, is survived by her son, YI YAO,  and her son,  QIANG YAO, and all other lawful beneficiaries and heirs;

61.     JIANFENG YAO who was a citizen of the People's Republic of China, is survived by his son, YI YAO, his son, QIANG YAO, and father, BORONG YAO, and all other lawful beneficiaries and heirs;

62.     ZHONG HAI ZHANG, who was a citizen of the People's Republic of China, is survived by his spouse, LIAN HUA HU,  and all other lawful beneficiaries and heirs;

63.     ZHAOFANG ZHAO, who was a citizen of the People's Republic of China, is survived by her son, JIANGTIAN LOU, her son, JIANGHAO LOU, her daughter,  JIANGYUE LOU, and all other lawful beneficiaries and heirs;

64.     BAOTANG LOU, who was a citizen of the People's Republic of China, is survived by his son, JIANGTIAN LOU, his son, JIANGHAO LOU, her daughter, JIANGYUE LOU, and all other lawful beneficiaries and heirs;

65.     FENG ZHOU, who was a citizen of the People's Republic of China, is survived

by her daughter, MENGYAO ZHOU, father, XUELIANG ZHOU, and all other lawful beneficiaries and heirs;

66.     JINLING ZHOU, who was a citizen of the People's Republic of China, is survived by his daughter, MENGYAO ZHOU, mother, XIUYING WANG, and all other lawful beneficiaries and heirs;

67.     SHIJIE ZHOU, who was a citizen of the People's Republic of China, is survived by his spouse, SHUFANG LI,  his son, KAILAI ZHOU, and son, YALAI ZHOU, and all other lawful beneficiaries and heirs ;

68.     SHAOHUA ZHANG, who was a citizen of the People's Republic of China, is survived by her spouse, SHENGYUAN ZHAO, her minor daughter, Z.Z., father, SHIJI ZHANG, mother, Plaintiff QIULAN LI, and brother, XIUSHU ZHAO, and all other lawful beneficiaries and heirs;

69.     XIANWEN SHI, who was a citizen of the People's Republic of China, is survived by his spouse, LIJUN GUO, his minor son, Y.S., father,  FENGXIN SHI, and mother, XINGXIU PU, and all other lawful beneficiaries and heirs;

70.     LI YANG, who was a citizen of the People's Republic of China, is survived by her spouse, JIAN JIAO, father, GENGXIN YANG, and mother, Plaintiff SHUYING HAN, and all other lawful beneficiaries and heirs;

71.     BING MENG, who was a citizen of the People's Republic of China, is survived by his sister YAN MENG, his grandmother, DUNYING ZHAO, and all other lawful beneficiaries and heirs;

72.     CHUANE XU, who was a citizen of the People's Republic of China, is survived by her daughter YAN MENG, mother, DUNYING ZHAO, and all other lawful beneficiaries and

heirs;

73.     FANQUAN MENG, who was a citizen of the People's Republic of China, is survived by his daughter, YANG MENG, and all other lawful beneficiaries and heirs;

74.     JIXIN FENG, who was a citizen of the People's Republic of China, is survived by his spouse, CHENGYING LIU, his son, JINSHI FENG, and  daughter,  JIEHAO FENG, and all other lawful beneficiaries and heirs;

75.     QINGJUN TIAN, who was a citizen of the People's Republic of China, is survived by his son, CHAO TIAN, father, JINQI TIAN, and mother, LAMEI LI, and all other lawful beneficiaries and heirs;

76.     LIPING XIE who was a citizen of the People's Republic of China, is survived by her son, CHAO TIAN, mother, SHUQIN LI, and all other lawful beneficiaries and heirs;

77.     WENBO LI, who was a citizen of the People's Republic of China, is survived by her father, YUEHUA LI and her mother, SHUPING LI, and all other lawful beneficiaries and heirs;

78.     FUXIANG GAN, who was a citizen of the People's Republic of China, is survived by his spouse MIN WAN, his minor son, T.G., father, MINGSONG GAN, and mother, YUHZEN GAN, and all other lawful beneficiaries and heirs;

79.     XIAODAN YAN, a/k/a DANDAN YAN, who was a citizen of the People's Republic of China, is survived by her father, GANG YAN and mother, XUEYAN MA, and all other lawful beneficiaries and heirs;

80.     QIAO XING, who was a citizen of the People's Republic of China, is survived by YUZHI XING and LIXIA ZHANG, the father and mother of QIAO XING, and all other lawful beneficiaries and heirs;

81.     HAODONG WEN, who was a citizen of the People's Republic of China, is represented by his mother, NALI YU, and all other lawful beneficiaries and heirs;

82.     SIWAN HU, who was a citizen of the People's Republic of China, is survived by YANMIN ZHANG and XUEZHENG LI, the grandfather and grandmother of SIWAN HU, and all other lawful beneficiaries and heirs;

83.     NA ZHANG who was a citizen of the People's Republic of China, is survived by YANMIN ZHANG and XUEZHENG LI, the father and mother of NA ZHANG and all other lawful beneficiaries and heirs;

84.     YONGGANG WANG, who was a citizen of the People's Republic of China, is survived by KEFEI WANG and LIMANG CUI, the father and mother of YONGGANG WANG, and all other lawful beneficiaries and heirs

85.     All Plaintiffs who have lost their spouses on MH370, and spouses who were lost on MH370, each assert and bring their separate claims and causes of action for loss of consortium.

## THE DEFENDANTS

86.     According to the Malaysian Airlines System Quarterly Report for the First Quarter Ended 31 March 2014, Malaysia Airlines was an international air carrier principally engaged in the business of air transportation and provision of related service.

87.     Malaysia Airlines did business in and continues to do business in the United States of America in various cities and with flights to and from various United States. airports as well as other international locations, including China, both by flying Malaysia Airlines flights and through agreements with other air carriers known as code sharing and other contractual arrangements to share flights, flight numbers and passengers.

88.     Malaysia Airlines sold tickets to Plaintiffs' passengers through other airlines, which airlines did not provide to the passengers the notices required under M99 which is a prerequisite for the carrier to receive the benefits and limitation on jurisdiction and liability provided to carriers by M99.  Passengers on MH370 also purchased their tickets through websites and other providers, brokers or sellers located in the United States and other locations outside Malaysia.

89.     Defendants Malaysia Airlines, and each of them, at all times relevant herein conducted business in the United States from offices, airports, cargo facilities and other business locations in the U.S.  According to the MAS and MAB website offers air transportation to and from Atlanta, Boston, Chicago, O'Hare, Dallas-Fort Worth, Guam, Honolulu, Los Angeles, Miami, Minneapolis, New York J.F. Kennedy, Portland, Raleigh-Durham and Seattle.

90.     Despite claiming that MAS and MAB are separate companies, and that MAB is not a successor company to MAS, according to official filings with the Suruhaujaya Syarikat Malaysia Companies Commission (the Malaysia Registrar of Companies) of Malaysia, Defendant Malaysian Airlines System Berhad (MAS), known as "Malaysia Airlines" Company Number 10601-W, incorporation date April 3, 1971 states that its old name is "Malaysia Airlines Berhad."  Defendant Malaysia Airlines Berhad (MAB), which is also known as "Malaysia Airlines" is company number 1116941-X, incorporation date November 7, 2014, is also known as "Malaysia Airlines" and the persons in leadership positions at the alleged two separate Malaysia Airlines are virtually identical, except for one individual who did not transfer from MAS to the MAB Board of Directors, as summarized in the following chart:

|  | Malaysia Airlines 03-04-1971 | Malaysia Airlines 07-11-2014 |
|---|---|---|
| **Type** | Limited by Shares Public Limited | Limited by Shares Public Limited |

| **Status** | Existing | Existing |
|---|---|---|
| **Directors** | Md. Nor Bin Md. Yusof, Tan Sri<br>Mohamadon Bin Abdullah, DR<br>David Lau Nai Pek<br>Tan Boon Seng<br>Sukarti Bin Wakiman<br>Mohamad Morshidi Bin Abdul Ghani<br>Mohd Irwan Serigar Bin Abdullah<br>Mohammad Izani Bin Ashari<br>Mohammed Shazalli Bin Ramly, Dato<br>Mohd Shahazwan Bin Mohd Harris<br>Christopher Romanus Mueller<br>Ahmad Jauhari Bin Yahya | Md. Nor Bin Md. Yusof, Tan Sri<br>Mohamadon Bin Abdullah, DR<br>David Lau Nai Pek<br>Tan Boon Seng<br>Sukarti Bin Wakiman<br>Mohamad Morshidi Bin Abdul Ghani<br>Mohd Irwan Serigar Bin Abdullah<br>Mohammad Izani Bin Ashari<br>Mohammed Shazalli Bin Ramly, Dato<br>Mohd Shahazwan Bin Mohd Harris<br>Christopher Romanus Mueller |
| **Manager** | Christopher Romanus Mueller | Christopher Romanus Mueller |
| **Shareholders** | Khazanah Nasional Berhad (a fund totally owned by the Government of Malaysia)<br>Total shares – 11,592,389,201 | Khazana Nasional Berhad (a fund totally owned by the Government of Malaysia)<br>Total shares – 999,998<br><br>Azizah Hanum Binti Haji Md. Tamat<br>Total shares – 1<br><br>Rosemun Bin Hassan<br>Total shares - 1 |
| **Charges or Obligations of Company**[1] | 319 Listed<br>113 satisfied<br>206 unsatisfied | 100 Listed<br>All unsatisfied |

Even the Twitter accounts are identical for the alleged two Malaysia Airlines, both using the

handle @MAS, including on the same day.

---

[1] Many are the same for both companies. No claims or damages of any passenger of MH370 (or MH17) and no personal representatives, family member or estate of any MH370 (or MH17) passenger were listed as charges of either company.



91.    Act 765 of the Laws of Malaysia was enacted to assist Malaysia Airlines, both

MAS and MAB, defeat their liabilities, obligations, responsibilities, and damages owed to the

passengers of MH370 (and presumably also to the passengers of MH17).  Act 765 impaired the

rights and abilities of the families to seek redress for the loss of their loved ones and left no

viable airline defendant as defined by M99 and no assets other than the aviation liability

insurance now controlled by Defendant Allianz.   Act 765 left MAS  "dead."

92.    In Paragraph 21(3), Act 765 provides in part:

Prior to the implementation of the proposal, the Administrator shall send a copy
of the proposal and the report of the Independent Advisor by registered post to the last
known address of or through electronic medium to each of the creditors of the
Administered Companies affected by the terms of the proposal.

93.    No Plaintiffs, nor any other family members of Plaintiffs' passengers, nor their

personal representatives, nor their attorneys, were sent a copy of the report of the Independent

Advisor by registered post or by electronic medium, or by any means whatsoever. No Plaintiffs,

the next of kin of passengers of MH370 or other family members of MH370, nor their

representatives, were given any notice under Act 765 or as described in or contemplated by Act

765.

94.     Act 765 further states, in Paragraph 21(6):

Notwithstanding the failure to notify any creditors of the Administered Companies and persons affected by the terms of the proposal in accordance with the requirements of subsection (3), such failure shall not affect the validity of the proposal.

Therefore Paragraph 21(6) further destroyed any reasonable opportunity for Plaintiffs to be advised that the Administrator under Act 765 could proceed despite ignoring and failing to include among any of the charges (creditors) of the company, the liabilities, obligations, responsibilities and damages owed to families of passengers of MH370.

95.     Act 765 states that the successor MAB formed on November 7, 2014 is not a successor to the previous MAS, but that provision is not further defined other than to state it addresses employment related issues with Malaysia Airlines' former and or current employees and unions.

96.     There is no statement in Act 765 that MAB may not be deemed to have successive liability in areas other than employment issues.  However, Act 765, Paragraph 29(1), states that any liability that may be transferred to the successor Malaysia Airlines (MAB) must be transferred by the Administrator, but the Administrator has failed and or refused to transfer MAS liability to MAB.

97.     Furthermore, in MH370 cases filed in Malaysia, the Administrator and MAB have insisted that the Malaysia Airlines formed on November 7, 2014 (MAB), is not a successor corporation to MAS and the Administrator and/or MAB have moved to dismiss all such claims and cases.

98.     Because Defendants have asserted that they are entitled to the protections and limitations on liability, jurisdiction, and damages under Act 765 (and M99), Plaintiffs must file

this action notwithstanding the attempts of the Defendants through Act 765 and other defensive and evasive measures to thwart the rights and abilities of the families of MH370 passengers to seek legal redress for their losses.

99.     Pursuant to Article 32 of M99 (formerly Article 27 of the Warsaw Convention), "In case of the death of the person liable, an action for damages lies in accordance with the terms of this convention against those legally representing his or her estate."

100.    Pursuant to the International Civil Aviation Organization "International Conference on Air Law (Convention for the Unification of Certain Rules for International by Air), Montreal, 10-28 May 1999, Volume III, Preparation Material, 4:247) the term "person" encompasses both legal and natural persons.

101.    Therefore, pursuant to the action of the laws of Malaysia, specifically Act 765, Malaysia Airline System Berhad Company Number 10601-W (MAS), the carrying or actual carrier and "the person liable" has ceased to exist and is effectively "dead" under the definitions of M99; all operations have ceased and all assets, shares and equity of MAS have been disposed or assigned;  Act 765 states the new Malaysia Airline Berhad Company Number 1116944-X (MAB), is not a successor corporation and is in no way liable for MH370; and the MAS Administrator has moved to dismiss all cases against the new Malaysia Airlines (MAB). Therefore MAS has "died" and has ceased to exist.  There is no entity other than the estate of MAS consisting of the MAS aviation liability insurance policy which is legally represented by Allianz Global Corporation and Specialty (AGCS) and Henning Haagen the self described "Global Head of Aviation" for AGCS maintains his office in and resides in the United States of America.

102.    Allianz Global Corporate and Specialty listed MH370 in the Allianz Global

Corporate and Specialty, Global Loss Atlas: 10 Major Non-Nat Cat Losses 2014 at http://www.agcs.allianz.com/assets/Infographics/Global%20claims%20Review/AGCS-LossAtlas2104_web.png, which lists its liability, responsibility, obligation, damages and losses for MH 370 as "USD [Dollars] TBC."



least as governs MH370, and as admitted by MAS in its own Quarterly Reports, the only avenue of redress left for MH370 passenger families.

103.    Allianz Global Corporate and Specialty is headed by Henning Haagen who states on his LinkedIn account that he is the Global Head of Aviation for AGCS.  Henning Haagen is responsible for AGCS and is legally responsible for the MAS liability coverage. He admits his

location is in the United States of America.





104.    Defendant ALLIANZ GLOBAL CORPORATE AND SPECIALTY maintains an office in Washington, D.C. and does business in this District.

105.    Therefore under M99, Allianz Global and its global head of aviation Henning Haagen are those legally representing the only remaining estate of MAS left for the MH 370 passengers, their families and personal representatives, and an action for damages properly lies

against them in this district in accordance with the terms of M99.


**CLAIMS FOR RELIEF UNDER THE MONTREAL CONVENTION NEGLIGENCE OF DEFENDANTS AND FOR WRONGFUL DEATH AND SURVIVAL ACTIONS AGAINST ALL  DEFENDANTS**

106.    The Government of Malaysia declared Flight MH370 to be an "accident" within the meaning of Chicago Convention.

107.    The Government of Malaysia also declared MH370 to have suffered an "accident" within the meaning of Article 17 of M99.

108.    The Malaysia Prime Minister declared that the "accident" led directly and proximately to the injury and death of all passengers of MH370, including Plaintiffs' family members.

109.    Prior to March 8, 2014, the United States of America, Malaysia and the People's Republic of China signed, ratified, and adopted as law, the Montreal Convention, as well as all subsequent amendments to M99.

110.    Malaysia Airlines has asserted that because Flight MH370 was between points in two different nations, that is, between Malaysia and the People's Republic of China, and because both Malaysia and the People's Republic of China were, at the time of Flight MH370, signatories to the Montreal Convention, Flight MH370 constituted "international carriage" as that phrase is defined in Article 1 as well as other Articles of M99.

111.    Article 39 of M99 identifies two classes of carriers that are subject to liability. One of those two classes is the "actual carrier," which is defined as one who "performs. . . the whole or part of the carriage." Under Article 39, Malaysia Airlines was the "actual carrier" of Flight MH370. The other class of carrier is the contracting carrier which is defined as the

principal which "makes a contract of carriage." One or more contracting carriers may also be liable under Article 40 of M99. Nonetheless, Malaysia Airlines is liable for the "carriage which it performed," to wit: Malaysia Airlines Flight 370 on March 8, 2014. Plaintiffs' passengers, and some of them, booked and purchased their passage on carriers other than Malaysia Airlines although they were boarded on to Malaysia Airlines Flight 370 as their carrying carrier or actual carrier. The contracting carriers, and some of them, failed to provide the necessary notices and warnings required by M99 that the actual or carrying carrier (as well as the contracting carrier), may seek the protections and limitations of liability and jurisdiction of M99 and those warnings and disclosures are conditions precedent for the application of M99 as against the passengers and their personal representatives and family members.

112.    Pursuant to Article 17 of the Montreal Convention, Malaysia Airlines "is liable for damage sustained in the case of death or bodily injury to a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking."

113.    Pursuant to Article 32 of M99, Allianz and its head of aviation are responsible for the dead and defunct carrier as the legal and/or natural person responsible for the estate of the liable carrier.

114.    Defendants' liability for the injuries and declared deaths of the passengers, and those damages suffered by their families, under the Montreal Convention is absolute, that is, it is premised on strict liability, up to 113,000 Special Drawing Rights ("SDR").

115.    In addition, pursuant to Article 21(2) of the Montreal Convention, the Defendants are liable to the Plaintiffs for all personal injury, wrongful death and survival action damages exceeding 113,000 SDR unless Defendants, not the Plaintiffs, can prove that: (a) the injuries and

death were not due to the negligence or other wrongful act or omission of the carrier or its servants or agents; or (b) the injuries or deaths were solely due to the negligence or other wrongful act or omission of a third party.

116.    Defendants may also be bound by certain provisions of the IATA Intercarrier Agreement on Passenger Liability which waives liability limits and which Malaysia Airlines was a signatory.

117.    Defendants cannot prove any of the exceptions to liability set forth in M99 or other treaties or agreements.  For example, and by way of illustration only, as the following are not inclusive of all examples, Defendants failed in the following ways:

 a. They failed to take all steps to track MH370, because positive tracking such as that provided by Inmarsat was readily available but Malaysia Airlines failed or refused to pay for and use such service.

 b. They failed to take all steps to safeguard pilots, crew and passengers from dangerous cargo such as the 2,453 kilograms of lithium ion batteries in the cargo hold of MH370, which were banned by many countries and/or carriers for carriage in cargo holds of passenger planes because of the risks and dangers proven by prior instances of fire and explosions of such batteries in cargo holds.

 c. They failed to continuously and responsibly monitor MH370 in flight. If they had been, Malaysia Airlines would have noted when MH370 went missing, and the search could have been timely initiated.

 d. They failed to perform all inspections and repairs recommended by plane assembler Boeing, engine manufacturer Pratt & Whitney, and all component

manufacturers and suppliers.

e.  They failed to take any or any adequate steps ensure that MH370 was free from all defects;

f.  They failed to ensure their maintenance and all subcontractors met or exceeded all applicable safety standards and used only legitimate parts;

g.  They failed to take any of any adequate steps to honor the terms of contract with the MH370 passengers;

h.  They failed to take any or any adequate steps to ensure that the MH370 passengers safely reached Beijing, China;

i.  They failed to take any or any adequate steps to ensure the MH370 passengers reached Beijing, China, or any, destination safely;

j.  They failed to take any or any adequate steps to ensure and prevent any passengers with stolen travel documents to purchase tickets;

k.  They failed to take any or any adequate steps to ensure and prevent passengers with stolen travel documents to check-in and travel on MH370;

l.  They failed to take any or any adequate steps to prevent passengers with stolen travel documents to pass through security checks prior to boarding;

m.  They failed to take any or any adequate security checks at all verification points;

n.  They failed to take any or any adequate steps to ensure that the aircraft was adequately and properly maintained;

o.  They failed to take any or any adequate steps to ensure that the Emergency Locator Transmitters were in working condition before MH370 departed for

Beijing, China;

p.   They failed to take any or any adequate steps to ensure that the Emergency Locator Transmitters were of 406 MHz which are capable of detection by satellite;

q.   They failed to take any or any adequate steps to upgrade, update or purchase Emergency Locator Transmitters of newer models that would have located MH370;

r.   They failed to take any or any adequate steps to upgrade or update the batteries of the Underwater Locator Beacons;

s.   They failed to change the SSFDR ULB battery which expired in December 2012;

t.   They failed to change the SSFDR ULB battery which would have resulted in the location, search and rescue of MH370;

u.   They failed to have adequate communication and location systems that would properly and correctly communicate, contact and identify the location of MH370;

v.   They failed to correctly identify the location of MH370 at all material times;

w.   They recklessly relayed and/or gave incorrect location of MH370 being in Cambodian airspace at around 2:04 a.m. the day it went missing;

x.   They recklessly relayed and/or gave incorrect location of MH370 being in Cambodian airspace when the Malaysia government's radar allegedly tracked MH370's location along the Straits of Malacca and in Malaysia;

y.   They recklessly relayed and/or gave incorrect location of MH370 being

"somewhere east of Vietnam" at around 2:35 a.m.;

z.  Their flight tracker information on MH370 was based on flight projection and not reliable aircraft positioning of MH370, making its purported locations speculative and inaccurate;

aa. They failed to have adequately and properly trained staff and personnel;

bb. They failed to have adequately and properly trained staff who were trained to handle emergency situations;

cc. They failed to take any or any adequate actions to send the search and rescue party immediately after knowing that MH370 was incommunicable;

dd. They failed to know that MH370 had already carried out an air turn back towards Malaysia and may have been in distress;

ee. They failed to know that MH370 was allegedly flying above Kelantan, Perak, Penang and Pufau Perak along the Straits of Malacca between 1:30 a.m. and 2:02 a.m.;

ff. They failed to know that MH370 was allegedly flying towards Southern Indian Ocean;

gg. They allowed MH370 to fly for several more hours than intended and allowed the deceased to suffer anxiety, mental anguish, stress, fear, pain and injury, before it is believed to have crashed in the Southern Indian Ocean;

hh. They failed to take any or any adequate steps to immediately inform the Plaintiffs that MH370 was lost and left the Plaintiffs to find out about the loss of MH370 through the media;

ii. They caused the Plaintiffs to suffer mental anguish, anxiety, stress and

physical injury and illness stemming therefrom;

jj.  They failed to take any or any adequate steps to keep the Plaintiffs updated and  abandoned the Plaintiffs to learn updates on MH370 from the media;

kk.  They failed to provide adequate care and support to the Plaintiffs following the loss of MH370;

ll.  They failed to take proactive actions to send search aircraft for at least 10 hours following the last communication with MH370;

mm.   They failed to direct the Malaysian Civil Aviation Authority, or anyone else, to issue and initiate the distress phase immediately after losing all communications with MH370;

nn.  They failed to provide adequate and satisfactory answers to the Plaintiffs and other families causing them more stress, anxiety, mental anguish and physical illness and injury stemming therefrom;

oo.  They issued a text message (SMS) to the Plaintiffs to declare the loss and presumed death of the MH370 passengers and that MH370 crashed in the Southern Indian Ocean and causing more stress, anxiety, mental anguish, physical illness and injury stemming therefrom.

pp.  They failed to look after and continue with the care and support of the Plaintiffs thereby increasing and accentuating their pain, suffering, stress, anxiety, mental anguish, physical illness and injury stemming therefrom;

qq.  They failed to execute their duties with due care or with due regard to the lost MH370 passengers and/or Plaintiffs' rights and interest;

rr.  They failed to execute their duties owed to MH370 passengers and Plaintiffs

in a manner that was not detrimental to the rights, interests and physical well being of the MH370 passengers and/or Plaintiffs;

ss. They failed to take any or any adequate steps to execute their duties with reasonable skill, diligence or care in all the circumstances or at all;

tt. They cannot prove that some other entity is <u>solely</u> liable for the disappearance and loss of MH370 and all on board;

uu. They cannot prove they took all reasonable, or really <u>any</u>, measures to locate MH370; and

vv. They failed to fund, pay, contribute or authorize payment for adequate and timely search activities.

By reason of the above and other failures, negligence and breaches of duty, the Defendants compromised and harmed the aircraft and all its passengers, Plaintiffs and Plaintiffs' lost loved ones. Defendants cannot prove they took reasonable measures to avoid all of the above failoures and many others, and therefore they are strictly liable under M99, which Defendants claim governs these Plaintiffs' claims. Full and further details of the breach of duties by the Defendants will be furnished after full discovery.

118.   Defendants owed a duty to Plaintiffs, Plaintiffs' family members on MH370, and all passengers on MH370, which they breached with the above failures and more as further developed in discovery.

119.   Defendants in operating commercial passenger services are held to the highest degree of care consistent with the operation of commercial airline service including its equipment and all aspects of its commercial air service to prevent injury, loss, damage and death.

120.   Defendants breached that duty of care by negligently, willfully, wantonly and

recklessly operating flight 370 in all aspects, and this breach was a substantial contributing factor to and a proximate cause of the loss of Plaintiffs' family members and the damages sustained by Plaintiffs.

121.    Defendants knew and should have known in the exercising of reasonable care would have known it was reasonably foreseeable that MH Flight 370 under such conditions subjected the MH370 passengers to unreasonable risk of personal injury, loss and/or death.

122.    Plaintiffs' and their family members are wholly without fault, factual or legal, for the loss of MH370.

123.    As a direct and proximate result of Defendants' conduct, MH370 was lost land Plaintiffs were harmed and suffered the damages set forth herein.

124.    The Defendants are therefore liable to the Plaintiffs for all compensatory damages and all damages to which the Plaintiffs, their passengers, their passengers' family members and the survivors and beneficiaries of the passengers may be entitled under applicable damages law.

125.    Plaintiffs allege there is a conflict in the damages laws of the various claims represented on MH370 and Plaintiffs further allege the damages laws of the U.S. should be applied.

## **CLAIM FOR DAMAGES**

126.    As a direct and proximate result of the negligence, actions, and inactions of the Defendants, Plaintiff, passengers, decedents' successors in interest, the beneficiaries of decedents' estates, and their family members suffered injuries and damages and are entitled to recover for their losses.

127.    Plaintiffs, Plaintiffs' estates, Plaintiffs' passengers, next of kin and the survivors of Plaintiffs' passengers have in the past, do in the present, and will in the future continue to

suffer the following damages for which they seek all fair and just recompense for all wrongful death, and survival claims allowed by law:

a.  All economic and non-economic damages allowed by law;

b.  For a measurable and significant period before, during and after the first and subsequent physical injuries and impacts, as well as before their death which was declared by Malaysia, the passengers sustained significant personal physical injuries, including conscious and physical pain and suffering, pre and post impact fright and terror, fear of impending death, mental anguish, emotional distress, and other severe injuries, suffering, distress and harm for a measurable period of time prior to their being lost and declared dead by Malaysia;

c.  Loss of being able to live life and the loss of enjoyment of life;

d.  Loss of earnings;

e.  Loss of gross earning power and earning capacity;

f.  Loss of net accumulations;

g.  Loss of past earnings;

h.  Loss of future and prospective earnings;

i.  Loss of inheritance;

j.  Any other pecuniary losses for the loss of the passengers;

k.  Loss of prospective estate accumulations;

l.  Funerals, services, shrines, bereavement, and other expenses which have been incurred due to the passengers' loss, that have become a charge against the estates or that were paid by or on behalf of the Plaintiffs, passengers, estates or family members;

m.  Pre-judgment interest;

n.   Post-judgment interest;

o.   Any other interest allowed by law;

p.   Costs, expenses, and attorneys' fees;

q.   Loss of support and services in money or in kind from the date of the disappearance of MH370 to the extent of the passengers' normal life expectancies;

r.   Loss of care, comfort, society, protection, companionship, instruction, guidance, tutelage, counsel, moral support and advice;

s.   Physical and mental pain and suffering from the date of the loss of MH370;

t.   Grief, emotional distress, and sorrow of the families and beneficiaries;

u.   Loss of enjoyment of life of the passengers' families and beneficiaries;

v.   Loss of the value of not having to live one's life alone;

w.   Loss of the pleasures of living;

x.   Loss of love;

y.   Loss of solace;

z.   Loss of familial care;

aa. Loss of spousal consortium, in cases where the passenger was married;

bb. Property loss and damage

cc. Punitive and/or exemplary damages as allowed by law;

dd. Any and all other damages to which Plaintiffs', Plaintiffs' passengers, family members, successors in interest, representatives, estates, survivors and beneficiaries are lawfully entitled under applicable law including under conflicts and choice of law principles;

ee. As MH370 was a transoceanic flight, fulfilling a role traditionally performed by a maritime vessel and the flight bore a significant relationship to traditional maritime

activity, Plaintiffs' claim all rights, claims, and remedies of both maritime wrongful death and maritime survival actions including punitive damages; and

ff.   Should the aircraft be found and it be determined or otherwise declared that MH370 passengers died on the high seas, there are additional damages to which the Plaintiffs may be entitled under such law and Plaintiffs reserve all such rights in the event such further and other evidence is revealed.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages as allowed by law, including punitive and/or exemplary damages, interest as allowed by law, and costs, expenses and attorneys' fees and other such relief as this Honorable Court deems fair and just.

<u>**DEMAND FOR JURY TRIAL**</u>

The Plaintiffs demand trial by jury on all issues triable as of right by a jury.

Dated: March 5, 2016

By:   __/s/Mary Schiavo_____
Mary Schiavo
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: 843-216-9000
Facsimile: 843-216-9450
mschiavo@motleyrice.com

James R. Brauchle
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: 843.216.9000
Facsimile: 843.216.9450
jbrauchle@motleyrice.com

*Attorneys for the Plaintiffs*